**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN AGUILAR,<br><br>*Plaintiff*,<br><br>*v.*<br><br>CITY OF CICERO, KENNETH DE FALCO, OFFICER GUZMAN #352, and UNKNOWN OFFICERS OF THE CICERO POLICE DEPARTMENT,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, JUAN AGUILAR, by and through his attorneys LOEVY & LOEVY, complains of DEFNDANTS CITY OF CICERO, KENNETH DE FALCO, OFFICER GUZMAN #352, and UNKNOWN OFFICERS OF THE CICERO POLICE DEPARTMENT, stating as follows:

**INTRODUCTION**

1. On June 13, 1989, Cicero Police Department detective Kenneth De Falco responded to a call of a sexual assault in Cicero, Illinois. The reported victim was R.M., a developmentally disabled thirteen-year-old girl.

2. Cicero Police Department officers went to a house near R.M.'s residence and rounded up all the men living there for an impromptu identification procedure.

3. De Falco stood with R.M. as she looked at the men. R.M. could not—and did not—identify any of the men as her rapist.

4. However, R.M. was able to identify Plaintiff Juan Aguilar and his cousin Ramiro: not as her rapist, but as men she had encountered while searching for her rapist.

5. Instead of accepting R.M.'s nonidentification, De Falco decided to close the case at that time, fabricating an identification against Mr. Aguilar and hiding evidence of his own misconduct.

6. De Falco and other Cicero Police Department officers also learned of exculpatory evidence, which they suppressed.

7. No physical or forensic evidence ever tied Mr. Aguilar to any assault against R.M.

8. Nevertheless, De Falco's scheme succeeded. Mr. Aguilar was subsequently convicted of an aggravated sexual assault that he did not commit and was sentenced to thirty years in prison.

9. Mr. Aguilar's conviction was eventually vacated, but not until he had spent more than sixteen years behind bars as an innocent man.

10. Mr. Aguilar brings this action pursuant to 42 U.S.C. § 1983 and Illinois law in order to hold Defendants accountable for their misconduct and for violating his constitutional rights, as well as to redress the pain, suffering, and loss of liberty that Defendants' misconduct caused him.

## JURISDICTION AND VENUE

11. This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress the Defendants' tortious conduct and their deprivation of Mr. Aguilar's rights secured by the U.S. Constitution.

12. This Court has jurisdiction of Mr. Aguilar's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper under 28 U.S.C. § 1391(b). The events and omissions giving rise to Mr. Aguilar's claims occurred within this judicial district, including the investigation,

prosecution, and trial resulting in Mr. Aguilar's wrongful conviction. In addition, many, if not all, of the Defendants reside in this judicial district.

## PARTIES

14. Plaintiff Juan Aguilar is a 58-year-old man who spent more than sixteen years of his life wrongfully incarcerated for a crime that he did not commit.

15. At all times relevant to the events described in this Complaint, Defendants Kenneth De Falco, Officer Guzman, and other Unknown Officers of the Cicero Police Department (collectively, "Defendant Officers") were law enforcement officers in the Cicero Police Department.

16. At all times relevant to the events described in this Complaint, Defendant Carol Kelly was a prosecutor with the Cook County State's Attorney's Office.

17. Defendant Town of Cicero is an Illinois municipal corporation that is or was the employer of the Officer Defendants during the times relevant to this Complaint.

## JUAN AGUILAR

18. In June 1989, Juan Aguilar lived in Cicero, Illinois. Mr. Aguilar was born to a very poor rural family in San Jose de Gracia, Mexico. From the time he was seven, he always worked, helping his family with chores, gathering wood for cooking, and caring for corn and beans as subsistence farming for his family.

19. As a young man, Mr. Aguilar left his hometown in the hopes of providing for himself and his family. By June of 1989, he had moved to Cicero, Illinois, where he found work as a laborer, painter, and drywaller.

## AGUILAR'S ARREST

20. On June 13, 1989, Mr. Aguilar and his cousin Ramiro were sitting in their apartment, which was on the second floor of a multi-unit building, when three teenagers whom Mr. Aguilar did not know entered his apartment.

21. The teenagers seemed to be looking for someone, but they did not speak Spanish and Mr. Aguilar did not understand enough English to communicate with them.

22. One of the teenagers said, in English, that they were going to call the police. Then, they left. Mr. Aguilar did not know what the teenagers were talking about. He remained in his apartment.

23. The three teenagers who had entered Mr. Aguilar's apartment were R.M., her sister, and a family friend.

24. At the time the teenagers entered Mr. Aguilar's apartment, they believed that R.M. had been raped earlier that night and were looking for her rapist.

25. Later that night, Cicero Police Department officers came to Mr. Aguilar's apartment and forced him and Ramiro, along with everyone else who lived there, to go outside.

26. At that point Defendant De Falco lined up Mr. Aguilar, his cousin Ramiro, and the other men who lived in the house.

27. De Falco then instructed R.M. to make two identifications.

28. R.M. indicated that she could not identify anybody as being involved in a rape against her. Nevertheless, De Falco told R.M. that she had to make an identification.

29. De Falco told R.M. to pick the men she had seen when she came to Mr. Aguilar's apartment with her sister. R.M. identified Mr. Aguilar and Ramiro—not as the perpetrators of a crime against her, but only as the men she had seen in Mr. Aguilar's apartment.

30. De Falco later fabricated evidence to falsely assert that R.M. had chosen the persons who were present when she was raped instead of the persons she had seen when she entered Mr. Aguilar's apartment with her sister.

31. De Falco failed to follow appropriate procedures for eyewitness identification.

32. De Falco and Defendant Guzman also suppressed evidence of R.M.'s non-identification and the improper tactics used during the lineup procedure.

33. Defendant De Falco had no reason to believe that Mr. Aguilar played any role in assaulting R.M.

34. Nevertheless, Mr. Aguilar and Ramiro were both arrested for the rape of R.M. and taken to the Cicero Police Department.

35. Mr. Aguilar knew nothing about any sexual assault against R.M. and was not involved in any assault.

36. Defendant De Falco thereafter wrote fabricated reports which were used to wrongfully prosecute and convict Mr. Aguilar and suppressed evidence of his wrongdoing, including evidence of R.M.'s true statements.

**SUPPRESSION OF EXCULPATORY EVIDENCE**

37. Even with their fabrications, the Defendant Officers were only able to concoct evidence that Mr. Aguilar had assisted in R.M.'s rape, not that he had actually raped her.

38. The Defendant Officers conducted additional investigation to identify the rapist.

39. The Defendant Officers gathered physical evidence and conducted interviews in search of the rapist.

40. This subsequent investigation indicated that Mr. Aguilar had indeed not raped R.M. and in fact was not involved in any crime against her.

41. The Defendant Officers thereafter suppressed exculpatory evidence they had gathered in order to secure Mr. Aguilar's conviction and close the case.

**AGUILAR'S WRONGFUL CONVICTION**

42. There was no probable cause to believe that Mr. Aguilar was involved in assaulting R.M. in any way, either before or after Defendants' misconduct.

43. No physical or forensic evidence ever connected Mr. Aguilar to the alleged crime.

44. Nonetheless, Mr. Aguilar was prosecuted because of Defendants' misconduct. Following a bench trial, Mr. Aguilar was convicted of aggravated criminal sexual assault and sentenced to thirty years in prison.

45. In addition to facing a prison sentence for a crime he did not commit, Mr. Aguilar faced the stigma of being convicted of a sexual offense against a minor.

46. Without the Defendant Officers' misconduct, Mr. Aguilar would have been neither prosecuted nor convicted.

**TOWN OF CICERO'S POLICIES AND PRACTICES**

47. During the times relevant to Mr. Aguilar's claims, the Town of Cicero, as a matter of practice and policy, allowed officers to: manipulate or coerce witnesses into making false or fabricated statements; fail to document or disclose exculpatory evidence; fail to gather or analyze critical physical evidence; deliberately fail to follow obvious leads or use legitimate and accepted investigative practices; and coerce and threaten young Latino immigrants, both to close cases and/or for the personal gain of its officers.

48. The Town of Cicero, as a matter of practice and policy, chose to not require officers to report misconduct by fellow officers; condoned a code of silence, allowed and encouraged retaliation against officers who reported against one another; hid and ignored

evidence of officer misconduct; and failed to document, make inquiries regarding, or take action in response to allegations of officer misconduct.

49. The Town of Cicero was aware of the widespread practice of fabricating false inculpatory statements and withholding exculpatory information from criminal defendants, but took no action to end said practice, thereby encouraging and perpetuating the very same abusive practices that harmed Mr. Aguilar.

50. The Town of Cicero, as a matter of practice and policy, refused to enact policies or provide proper training that would have ensured the integrity of investigations via the disclosure of exculpatory evidence.

51. The Town of Cicero had a custom and practice of permitting its officers to engage in a wide variety of improper and unreliable investigative practices, including but not limited to: obtaining identifications through manipulative and coercive means, manipulating or coercing witnesses into making false or fabricated statements, failing to document or disclose exculpatory evidence, failing to document witness statements and instead relying solely on an officer's claims about what the witness said, and failing to gather or analyze critical physical evidence.

52. As of the time of Mr. Aguilar's arrest and prosecution, the Town of Cicero chose not to implement adequate policies, training, procedures, and guidelines to ensure the disclosure of exculpatory evidence and protect the integrity, legitimacy and accuracy of investigations, prosecutions, and convictions.

53. The Town of Cicero also chose to not implement or enforce policies that would prevent the suppression and fabrication of evidence. For example, it did not implement or enforce a policy requiring detectives to make contemporaneous reports of interviews and investigative actions. As a result, detectives were able to add and omit details after the

investigation was finished, both to emphasize inculpatory information and/or omit exculpatory evidence.

54. The Town of Cicero also failed to provide adequate supervision, discipline, and training to ensure that its officers, including supervisors, met their obligations to report and discipline misconduct by fellow officers.

55. The Town of Cicero operated an internal affairs system with the purpose of undermining and ignoring civilian complaints instead of responding to them.

56. Pursuant to the practice of turning a blind eye to police misconduct, supervisors frequently chose not to document, make inquiries regarding, or take action in response to allegations of officer misconduct, including allegations made by officers of the Town of Cicero.

57. The Defendant Officers were never disciplined in connection with the misconduct that led to Plaintiff's conviction.

58. Corruption was rampant within the Cicero Police Department in 1989. Officers regularly solicited bribes, fabricated evidence, and discriminated against the growing Latino population of the Town of Cicero. The Town of Cicero and its policymakers were aware of these practices and allowed them to continue.

59. The Town of Cicero allowed its officers to violate the rights of young Latino men in a number of ways, including but not limited to by fabricating evidence against them and soliciting bribes from them.

60. As a young Latino male who did not speak English, Mr. Aguilar was an easy target for the Defendant Officers, who knew they could pin a crime on him without resistance from the Town of Cicero.

61. The Defendant Officers knew that the Town of Cicero would allow them to engage in the misconduct described in this Complaint with impunity in that it would never correct or discipline them.

62. In the above ways, among others, the actions and inactions of the Town of Cicero and its policymakers were a moving force behind the misconduct alleged in this Complaint.

**MR. AGUILAR'S WRONGFUL CONVITION IS VACATED**

63. Mr. Aguilar began serving his sentence in 2004. He spent more than sixteen years in prison because of Defendants' misconduct.

64. Mr. Aguilar never stopped trying to prove his innocence.

65. In November of 2020, the Illinois Supreme Court reinstated Mr. Aguilar's direct appeal to his conviction, primarily because Mr. Aguilar lacked an interpreter during key phases of his trial and therefore could not meaningfully participate in his criminal proceedings.

66. On December 17, 2021, Mr. Aguilar succeeded in his appeal, with the Illinois Court of Appeals ruling that the evidence against him was insufficient to sustain his conviction.

67. As a result, Mr. Aguilar's conviction was vacated.

**MR. AGUILAR'S INJURIES**

68. Mr. Aguilar's conviction was finally overturned, but significant damage was done.

69. Because of the Defendants' misconduct, Mr. Aguilar was taken away from, and missed out on, the lives of his family and his friends. Mr. Aguilar was robbed of opportunities to gain an education, to raise his son and daughter, to share a home with his wife, to engage in meaningful labor, to develop a career, and to pursue his interests and passions. Mr. Aguilar watched his friends and family move forward with their lives while he remained wrongly

imprisoned. Mr. Aguilar was deprived of all the fundamental enjoyments of the human experience, liberties and pleasures which all free people experience as a matter of right, including the basic freedom to live one's life as an autonomous human being.

70. During his more than sixteen years of wrongful imprisonment, Mr. Aguilar was detained in harsh and often dangerous conditions in Illinois prisons. Those conditions were made even harsher and more dangerous because Mr. Aguilar had been branded a child rapist, a label that made him particularly despised by both the prison staff and other residents of the prisons in which he served his sentence.

71. As a result, Mr. Aguilar lived in constant emotional anguish, never knowing whether the truth would come out and whether he would ever be exonerated.

72. In addition to the severe trauma of wrongful imprisonment and Mr. Aguilar's loss of liberty, the Defendants' misconduct continues to cause Mr. Aguilar physical and psychological pain and suffering to this day, including constant fear, nightmares, anxiety, depression, despair, and other physical and psychological effects. Mr. Aguilar has also suffered profound humiliation and continuing reputational harm as a result of being incorrectly branded a child rapist.

**COUNT I**
**42 U.S.C. § 1983 – Due Process**
**(Fourteenth Amendment)**

73. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

74. As described in detail above, the Officer Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and his right not to be wrongfully convicted and imprisoned.

75. In the manner described more fully above, the Officer Defendants fabricated witness statements falsely implicating Plaintiff in the crime.

76. The Officer Defendants knew this evidence was false.

77. The Officer Defendants obtained Plaintiff's conviction using this false evidence, and they failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff during his criminal case.

78. The Officer Defendants procured supposed eyewitness identifications of Plaintiff, which they knew to be false and unreliable, using unduly suggestive procedures. Knowing this, Defendants still caused these same identifications to be used during Plaintiff's criminal trial.

79. In addition, the Officer Defendants deliberately withheld exculpatory evidence from state prosecutors, Plaintiff, and Plaintiff's criminal defense attorneys, including evidence that Defendants had manufactured false identifications of Plaintiff, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

80. In addition, based upon information and belief, the Officer Defendants concealed, fabricated, and destroyed additional evidence that is not yet known to Plaintiff.

81. The Defendants' misconduct resulted in the unjust and wrongful criminal prosecution and conviction of Plaintiff and the deprivation of Plaintiff's liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not have and would not have been pursued.

82. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

83. As a result of the Defendants' misconduct described in this Complaint, Mr. Aguilar suffered loss of liberty, severe mental anguish, humiliation, degradation, physical and

emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

84. The misconduct described in this Count was undertaken pursuant to the policies and practices of the Town of Cicero, in the manner also more fully described above.

**COUNT II**
**42 U.S.C. § 1983 – Malicious Prosecution and Unlawful Detention**
**(Fourth and Fourteenth Amendments)**

85. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

86. In the manner described above, the Officer Defendants individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, and in spite of the fact that they knew Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

87. In so doing, these Defendants maliciously prosecuted Plaintiff and caused Plaintiff to be deprived of his liberty without probable cause and to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

88. The misconduct described in this Complaint was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

89. As a result of Defendants' misconduct described in this Complaint, Plaintiff suffered loss of liberty, severe mental anguish, humiliation, degradation, physical and emotional pain and suffering, along with other grievous and continuing injuries and damages as set forth above.

90. The misconduct described in this Count was undertaken pursuant to the policies and practices of the Town of Cicero, in the manner more fully described below in Count V.

**COUNT III**
**42 U.S.C. § 1983 – Failure to Intervene**

91. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

92. In the manner described above, during the constitutional violations described herein, one or more of the Officer Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

93. The misconduct described in this Complaint was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

94. As a result of Defendants' misconduct described in this Complaint, Plaintiff suffered loss of liberty, severe mental anguish, humiliation, degradation, physical and emotional pain and suffering, along with other grievous and continuing injuries and damages as set forth above.

95. The misconduct described in this Count was undertaken pursuant to the policies and practices of the Town of Cicero, in the manner described more fully below in Count V.

**COUNT IV**
**42 U.S.C. § 1983 – Conspiracy to Violate Constitutional Rights**

96. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

97. In the manner described more fully above, the Officer Defendants, acting in concert with other co-conspirators, both known and unknown, reached an agreement among themselves to fabricate evidence and to detain, prosecute, and finally convict Plaintiff for the

sexual assault of R.M., regardless of Plaintiff's guilt or innocence, and thereby deprived him of his constitutional rights.

98. In so doing, these co-conspirators agreed to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

99. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in that joint activity.

100. The misconduct described in this Complaint was objectively unreasonable, was undertaken intentionally, and was performed in total disregard of the truth of Plaintiff's clear innocence.

101. As a result of these Defendants' misconduct described in this Complaint, Plaintiff suffered loss of liberty, severe mental anguish, humiliation, degradation, physical and emotional pain and suffering, along with other grievous and continuing injuries and damages as set forth above.

102. The misconduct described in this Count was undertaken pursuant to the policies and practices of the Town of Cicero, in the manner described more fully below in Count V.

**COUNT V**
**42 U.S.C. § 1983 – Policy and Practice Claim against the Town of Cicero**

103. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

104. As described in detail above, the Town of Cicero is liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the policies, practices, and customs of the Town of Cicero, as well as by the actions of policy-making officials for the Town of Cicero.

105. At all times relevant to the events described in this complaint and for a period of time prior and subsequent thereto, the Town of Cicero failed to promulgate proper or adequate rules, regulations, policies, and procedures for: conducting photographic and live lineup procedures by officers and agents of the Cicero Police Department and Town of Cicero; the conduct of interrogations and questioning of criminal suspects; the collection, documentation, preservation, testing, and disclosure of evidence; the writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance of investigative files and disclosure of those files in criminal proceedings. In addition, or alternatively, the Town of Cicero failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers and agents of the Cicero Police Department and the Town of Cicero, with respect to these subjects.

106. These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the Cicero Police Department and the Town of Cicero, including the Defendants.

107. In addition, at all times relevant to the events described in this complaint and for a period of time prior thereto, the Town of Cicero had notice of a widespread practice and custom by officers and agents of the Cicero Police Department and the Town of Cicero under which individuals suspected of criminal activity, such as Plaintiff, were routinely deprived of their right to due process. For instance, it was common that suspects were prosecuted based on fabricated evidence, including fabricated eyewitness identifications and eyewitness identifications obtained using manipulated photographic or faulty lineup procedures.

108. In addition, at all times relevant to the events described in this complaint and for a period of time prior thereto, the Town of Cicero had notice of widespread practices by officers

and agents of the Cicero Police Department and the Town of Cicero, which included one or more of the following: (1) officers did not record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative materials to prosecutors and criminal defendants; (2) officers falsified statements and/or the testimony of witnesses; (3) officers fabricated false evidence implicating criminal defendants in criminal conduct; (4) officers failed to maintain or preserve evidence and/or destroyed evidence; and (5) officers pursued wrongful convictions through profoundly flawed investigations.

109. These widespread practices, individually and together, were allowed to flourish because the leaders, supervisors, and policymakers of the Town of Cicero directly encouraged and were thereby the moving force behind the very type of misconduct at issue, by failing to adequately train, supervise, and control their officers, agents, and employees on proper interrogation techniques and by failing to adequately punish and discipline prior instances of similar misconduct, therby directly encouraging future abuses such as those affecting Plaintiff.

110. The above widespread practices and customs, so well settled as to constitute de facto policies of the Town of Cicero, were able to exist and thrive, both individually and together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

111. As a result of the policies and practices of the Town of Cicero, numerous individuals have been wrongly convicted of crimes that they did not commit.

112. In addition, the misconduct described in this Complaint was undertaken pursuant to the policies and practices of the Town of Cicero, in that the constitutional violations committed against Plaintiff were either committed with the knowledge or approval of persons

with final policymaking authority for the Town of Cicero, or were actually committed by persons with such final policymaking authority.

113. Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of Town of Cicero, including but not limited to the individually named Defendants, who acted pursuant to one or more of the aforementioned policies, practices, and customs in engaging in the acts of misconduct described in this Complaint.

**COUNT VI**
**State Law Claim – Malicious Prosecution**

114. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

115. In the manner described above, the Officer Defendants, individually, jointly, and/or in conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

116. In so doing, the Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury to the Plaintiff.

117. The judicial proceedings were terminated in Plaintiff's favor and in a manner indicative of his innocence when his conviction was vacated in December of 2021.

118. The misconduct described in this Complaint was objectively unreasonable and was undertaken intentionally, with malice, and in disregard of the truth of Plaintiff's innocence.

119. As a result of the Defendants' misconduct described in this Complaint, Plaintiff suffered loss of liberty, severe mental anguish, humiliation, degradation, physical and emotional pain and suffering, along with other grievous and continuing injuries and damages as set forth above.

**COUNT VII**
**State Law Claim – Intentional Infliction of Emotional Distress**

120. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

121. The actions, omissions, and conduct of the Officer Defendants were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as has been more fully alleged above.

122. As a result of the Defendants' misconduct described in this Complaint, Plaintiff suffered loss of liberty, severe mental anguish, humiliation, degradation, physical and emotional pain and suffering, along with other grievous and continuing injuries and damages as set forth above.

**COUNT VIII**
**State Law Claim – Willful and Wanton Conduct**

123. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

124. At all times relevant to this complaint the Officer Defendants had a duty to refrain from willful and wanton conduct in connection with the R.M. sexual assault investigation.

125. Notwithstanding that duty, these Defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's rights.

126. As a result of these Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT IX**
**State Law Claim – Civil Conspiracy**

127. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

128. As described more fully in the preceding paragraphs, the Officer Defendants, acting in concert with other co-conspirators, both known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose and/or achieve a lawful purpose by unlawful means. In addition, these co-conspirators agreed amongst themselves to protect one another from liability for depriving Plaintiff of these rights.

129. In furtherance of their conspiracy, each of the co-conspirators committed overt acts and were otherwise willful participants in joint activity.

130. The violations of Illinois law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by their conspiracy.

131. The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and was in total disregard of the truth of Plaintiff's clear innocence.

132. As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, severe mental anguish, humiliation, degradation, physical and emotional pain and suffering, along with other grievous and continuing injuries and damages as set forth above.

## COUNT X
## State Law Claim – *Respondeat Superior*

133. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

134. While committing the misconduct alleged in the preceding paragraphs, the Police Officer Defendants were employees, members, and agents of the Town of Cicero, acting at all relevant times within the scope of their employment.

135. Defendant Town of Cicero is liable as principal for all torts committed by its agents.

## COUNT XI
## State Law Claim - Indemnification

136. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

137. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

138. The Officer Defendants were employees, members, and/or agents of Defendant Town of Cicero, acting at all relevant times within the scope of their employment in committing the acts of misconduct described herein.

139. Defendant Town of Cicero is responsible to pay any judgment entered against the Officer Defendants.

WHEREFORE, Plaintiff JUAN AGUILAR, respectfully requests that this Court enter a judgment in his favor and against Defendants, awarding compensatory damages, attorneys' fees, and costs against each Defendant, punitive damages against each of the Individual Defendants, and any other relief that this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, JUAN AGUILAR, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**JUAN AGUILAR**

BY: /s/ Jon Loevy
*One of Plaintiff's Attorneys*

Jon Loevy
Arthur Loevy
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
T: (312) 243-5900
F: (312) 243-5902